. IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| IRY JAMES WILLIAMS, #76503-080 | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv566 |
| ANDY PEYKOS, II, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Iry James Williams, currently confined in the federal prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The lawsuit was referred for findings of fact, conclusions of law, and recommendations for the disposition of the case.

**Procedural History and Factual Background**.

Plaintiff initiated this lawsuit by filing an original complaint on October 8, 2020[1] (Dkt. #1), while he was a state prisoner confined in the Beto Unit of the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ"). In response to the Court's Order (Dkt. #6), Plaintiff filed his amended complaint on January 4, 2021 (Dkt. #14). An amended complaint entirely supersedes and takes the place of an original complaint. *Clark v. Tarrant Cnty., Tex.*, 798

---

[1] His complaint was delivered to the prison officials on October 8, 2020. In *Houston v. Lack,* 487 U.S. 266 (1988), the Supreme Court established the prison "mailbox rule" and held that a *pro se* prisoner's complaint is deemed to be filed on the date that the prisoner submits the pleading to prison authorities to be mailed. *Id.* at 276; *see also Spotville v. Cain,* 149 F.3d 374, 376 (5th Cir. 1998) (per curiam) (holding that a *pro se* prisoner's § 1983 complaint is filed as soon as the pleadings have been deposited into the prison mail system).

F.2d 736, 740 (5th Cir. 1986). As a result, the amended complaint will be the governing complaint in this case.

In his amended complaint, Plaintiff brought suit against Andy Peykos, II, Andrews Peykos, Sr., former TDCJ-Correctional Institutions Director Lorie Davis[2], Officer Dinia Green, Warden William J. Wheat, Warden Keith E. Gorsuch, Unit Commissary Manager Benda Plantt, Nurse Unknown Utende, Physician's Assistant (P.A.) Cynthia Goins, Unknown Medical Staff at the Beto Unit, P.A. Steven Ciszewski, Officer Unknown Singleton, and Nurse Unknown Keenan as defendants. Plaintiff moved to voluntarily dismiss Officer Singleton and Nurse Keenan. (Dkt. ##22, 27). His motions were granted, and Defendants Singleton and Keenan were dismissed without prejudice. (Dkt. #33).

On March 22, 2022, Plaintiff's claims against Andrew Peykos, Sr. and Andrew Peykos, Jr., were severed and transferred to the Southern District of Texas. (Dkt. #34). The remaining Defendants are Davis, Green, Wheat, Gorsuch, Plantt, Utende, Goins, Unknown Beto Unit Medical Staff, and Ciszewski.

Plaintiff contends that on March 17, 2022, he purchased bottled water from the Beto Unit Commissary. The bottled water was manufactured by the Niagara Water Company. On March 19, 2020, Plaintiff drank one of the bottled waters and began to feel ill. He claims that the water was contaminated with a harmful pollutant. He attempted to complain to Officer Green about the contaminated water. She allegedly told him to get out of her face.

---

[2] Ms. Davis retired from TDCJ as of July 31, 2020. Effective August 10, 2020, Bobby Lumpkin became the new Director of the Correctional Institutions Division of TDCJ.

On March 25, 2020, Plaintiff submitted a sick call request (SCR) and was seen by Nurse Utende. He complained of lower back pain and told her that he had ingested contaminated water and needed to be thoroughly tested. Nurse Utende gave him non-aspirin for his pain and did not refer him to a provider. He asserts that she did not examine him. He asserts that he submitted several I-60s to the Medical Department complaining of lower back pain, which were ignored.

On April 28, 2020, P.A. Goins prescribed Meloxicam[3] to Plaintiff for his lower back pain, which he was allowed to keep on his person. One month later, on May 26, 2020, he was not able to stand or walk and was in excruciating pain. He was transported to the Medical Department, via stretcher, where he curled up in a fetal position and had an elevated blood pressure. He was given Methocarbamol[4] and Tylenol. (Dkt. #14, p. 7). After an hour or two, he was instructed to return to his housing area even though he was still in pain. He was transported in a wheelchair because he could not stand.

On May 27, 2020, approximately two months after he had consumed the contaminated water, Plaintiff returned to the Medical Department in a wheelchair, in excruciating pain. P.A. Ciszewski ordered an x-ray and then held Plaintiff's legs down during the x-ray, although Plaintiff was in pain. P.A. Ciszewski allegedly told Plaintiff that Plaintiff "[was] fine, just full of shit." Plaintiff claims he received no physical examination but was given ibuprofen, bisacodyl[5], docusate

---

[3] Meloxicam is a nonsteroidal anti-inflammatory drug (NSAID) used to relieve the symptoms of arthritis, such as inflammation, swelling, stiffness, and joint pain. www.mayoclinic.org, last visited Feb. 24, 2023.

[4] Methocarbamol is used with rest, physical therapy, and other measures to relax muscles and relieve pain and discomfort caused by strains, sprains, and other muscle injuries. Methocarbamol is in a class of medications called muscle relaxants. https://medlineplus.gov, last visited Feb. 24, 2023.

[5] Bisacodyl is used to treat constipation and is known as a stimulant laxative. It works by increasing the movement of the intestines, helping the stool to come out. https://www.webmd.com/drugs/2/drug-12263/bisacodyl-oral/details, last visited March 15, 2023.

sodium[6], and methocarbamol. He was sent back to his housing area even though he could not walk or stand and had to be returned in a wheelchair.

Plaintiff continued to send in I-60s to the Medical Department complaining of excruciating lower back pain, numbness in his upper right leg, could not walk, nor sleep. He states his complaint were ignored.

On or about June 24, 2020, Plaintiff saw P.A. Aillon (not a defendant here) who ordered a walker, x-rays, and a CT scan for Plaintiff's condition. In September 2020, Plaintiff was informed that he was scheduled for a CT scan. On October 5, 2020, Plaintiff was sent on a medical chain for the CT scan. On or about October 9, 2020, Nurse Practitioner ("N.P.") Gertrude Nwoke (not a defendant) informed Plaintiff that his CT scan was negative or normal. Plaintiff told NP Nwoke about his pain, inability to sleep, numbness in his leg, and weight loss. N.P. Nwoke prescribed him Ibuprofen for pain.

He brings claims under the Eighth and Fourteenth Amendments against Defendants asserting that they were deliberating indifferent to his health and safety. Plaintiff is seeking: (1) $300,000 in compensatory damages from each defendant, jointly and severally, (2) punitive damages in the amount of $50,000 from each defendant, (3) court costs, and (4) a declaratory judgment that his rights were violated under the United States Constitution.

**Preliminary Screening**.

Plaintiff was an inmate in the Texas prison system who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental

---

[6] Docusate sodium is a laxative to treat constipation. https://www.webmd.com/drugs/2/drug-323/docusate-sodium-oral/details, last visited March 15, 2023.

entity, Plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id*. at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts, when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however, inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard, a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id*. (citation omitted). Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke*, 490 U.S. at 327; *McCormick v. Stadler*, 105 F.3d 1059, 1061 (5th Cir. 1997).

Plaintiff has been allowed to plead his best case. *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). Once "a plaintiff has had a fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Id*. at 792. (explaining that "plaintiffs cannot be allowed to continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold.").

### Discussion and Analysis.

## I.    Claims occurring after October 8, 2020

Plaintiff's Original Complaint is deemed filed as of October 8, 2020.[7]  The date is important because this date determines which of Plaintiff's claims the Court may properly decide under *Gonzalez v. Seal,* 702 F.3d 785, 788 (5th Cir. 2012) (holding that pre-filing exhaustion is required and a court has no discretion to consider claims that have not been exhausted).

Prisoners are required to exhaust claims through the prison's grievance system *before* filing suit in court. *Jones v. Bock*, 549 U.S. 199, 203 (2007); *Gonzalez*, 702 F.3d at 788. In *Gonzalez*, a prisoner completed the two-step grievance process, but only after he filed his 42 U.S.C. § 1983 complaint. *Id.*, 702 F.3d at 787. The Fifth Circuit held: "Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Id.* at 788.

---

[7] The Court notes that Plaintiff's Complaint is dated October 8, 2020. (Dkt. #1, p. 42). *See Lack*, 487 U.S. at 276 (holding that a *pro se* prisoner's complaint is deemed to be filed on the date that the prisoner submits the pleading to prison authorities to be mailed).

The Court may not consider new issues or claims that arose after the filing of the lawsuit—as those later issues would not have been exhausted through the administrative remedies process before Plaintiff filed his Original Complaint here. *See Gonzalez*, 702 F.3d at 788 (explaining that a court has no discretion to consider claims that have not been exhausted). In his Amended Complaint (Dkt. #14), Plaintiff raised claims or events that occurred after the filing of his Original Complaint on October 8, 2020. Although the Court ordered Plaintiff to file an amended complaint after filing his Original Complaint (Dkt. ##6, 14), the purpose of the order was to seek clarification regarding existing claims and not an invitation to add new claims or parties that were not exhausted before filing suit.

The Court, as a result, will not consider Plaintiff's claims that occurred after October 8, 2020. Exhaustion must have occurred *before* the lawsuit is filed. *Gonzalez*, 702 F.3d at 788 ("[T]he case must be dismissed if available administrative remedies were not exhausted.") (emphasis added); *see also Covarrubias v. Foxworth*, No. 6:13-CV-812, 2017 WL 1159767, at *3 (E.D. Tex. Mar. 29, 2017) (looking to whether administrative remedies had been exhausted "at the time of the filing of the original complaint" rather than any amended complaint). Accordingly, Plaintiff's claims arising after October 8, 2020, are dismissed, without prejudice, for the failure to exhaust administrative remedies.

**III.    <u>Claims under the Eighth and Fourteenth Amendments</u>**

Plaintiff brings various claims under the Eighth and Fourteenth Amendments against Defendants in their official and individual capacities. Plaintiff claims that:

(1) Defendant Davis as the Director and final policy maker "jointly engaged" in placing a defective or dangerous product (polluted water bottle) into the stream of commerce in violation of the Eighth and Fourteenth Amendments. (Dkt. #14, pp. 18-19, 21).

(2) Wardens Gorsuch and Wheat were responsible for Plaintiff's health and safety while he was incarcerated under their supervision. He also contends they were deliberately ignored his complaints and disregarded Plaintiff's health that was documented by medical records, grievances, and incident reports in violation of the Eighth and Fourteenth Amendments. (Dkt. #14, pp. 19, 21).

(3) Defendant Plantt violated Plaintiff's rights by placing into the stream of commerce a defective or dangerous product (polluted water bottle), exposing him to unreasonable risk in violation of the Eighth and Fourteenth Amendments. (Dkt. 14, pp. 19, 21).

(4) Defendant Green violated Plaintiff's rights by disregarding and failing to abate conditions of defective or dangerous product (polluted water bottle) that Plaintiff ingested after being informed thus deliberately disregarding his health and safety in violation of the Eighth and Fourteenth Amendments. (*Id*.).

(5) Defendants Utende, Goins, Ciszewki, and the Beto Unit Medical Staff violated Plaintiff's rights by deliberately disregarding his health, prolonging, and delaying adequate medical care, ignoring his complaints of serious medical need in violation of the Eighth and Fourteenth Amendments. (*Id*)

Federal Rule of Civil Procedure 8(a) does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Courts need not accept legal conclusions as true, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient. *Id*. at 678. A plaintiff meets this standard when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible," or if the complaint pleads facts merely consistent with or creating a suspicion of the defendant's liability. *Id*.; *see also Rios v. City of Del Rio, Tex.*,

444 F.3d 417, 421 (5th Cir. 2006). Plaintiff's claims are rife with conclusory the-defendant-unlawfully-harmed-me accusations, without any substantive facts to support his claims.

### A.    Official capacity claims for money damages

To the extent Plaintiff is suing Defendants in their official capacities for money damages, that claim is barred by the Eleventh Amendment. Unless a State consents to suit or Congress exercises its power to override a state's immunity, the Eleventh Amendment bars Section 1983 suits in either state or federal courts. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Suits brought against state officials in their official capacity are, in effect, asserted against the state itself and are similarly barred. *Id.* at 71.

It follows that the Eleventh Amendment bars recovery of damages under 42 U.S.C. § 1983 from state employees in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). While a state official's future conduct may be subject to an injunction, a federal court may not award damages against a state official in his official capacity. *Saahir v. Estelle*, 47 F.3d 758, 762 (5th Cir. 1995). To the extent that Plaintiff seeks money damages from Defendants in their official capacities, the Eleventh Amendment bars his claims. The Court finds that Plaintiff's claim for money damages against the Defendants in their official capacities is dismissed for failure to state a claim upon which relief may be granted.

### B.    Fourteenth Amendment claim

Plaintiff contends under Section 1983 that Defendants' actions violated Plaintiff's Fourteenth Amendment procedural and substantive due process rights. (Dkt. #14, p. 21). Plaintiff maintains that Defendants placed a polluted water bottle into the stream of commerce and then

ignored his medical complaints resulting from consuming the contaminated water bottle. Plaintiff contends that these allegations show that Defendants violated Plaintiff's Fourteenth Amendment right to bodily integrity. (Dkt. #14, p. 20). Plaintiff has offered no more than conclusory allegations of a Fourteenth Amendment violation and relies on the same factual matters and allegations in his Eighth Amendment claim.

The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. To state a Fourteenth Amendment due process claim under Section 1983, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels,* 250 F.3d 943, 946 (5th Cir. 2001). "The threshold requirement of any due process claim is the government's deprivation of a plaintiff's liberty or property interest." *McCasland v. City of Castroville,* 514 F. App'x 446, 448 (5th Cir. 2013) (per curiam) (quoting *DePree v. Saunders,* 588 F.3d 282, 289 (5th Cir. 2009)). In *DeShaney v. Winnebago Cnty.,* 489 U.S. 189 (1989), the United States Supreme Court stated:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. *See Estelle v. Gamble,* [429 U.S. at 103] ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met"). In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause....

*Id.* at 199–200 (internal citations and footnotes omitted). Thus, the Fourteenth Amendment affords a person the right to be free of state-occasioned damage to bodily integrity if the plaintiff can show the defendant's actions were taken with deliberate indifference. *Whitley v. Hanna,* 726 F.3d 631, 650–51 (5th Cir. 2013) (quoting *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 450–51 (5th Cir. 1994) (en banc) (citing *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir. 1981))). Similarly, the Eighth Amendment's proscription of cruel and unusual punishments is violated by "deliberate indifference to serious medical needs of prisoners." *See Estelle,* 429 U.S. at 104.

Plaintiff has not alleged a Fourteenth Amendment claim separate from his Eighth Amendment right to be free from cruel and unusual punishment—which is asserted against state actors through the Fourteenth Amendment.[8] Thus, the Eighth Amendment is the proper vehicle for his claims. *See Whitley v. Albers,* 475 U.S. 312, 327 (1986) ("We think the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners...."). Allowing a factually identical Fourteenth Amendment due process claim would be superfluous. To the extent, Plaintiff is asserting a stand-alone Fourteenth Amendment due process claim, that claim should be denied as it subsumed by the Eighth Amendment. As Plaintiff's facts and allegations are the same as in his Eighth Amendment claim, those facts and allegations will be examined below.

---

[8] The Eighth Amendment by its own terms applies only to the federal government and is applicable to states only through the due process clause of the Fourteenth Amendment. *See Tuilaepa v. California,* 512 U.S. 967, 970, (1994); *see also Robinson v. California*, 370 U.S. 660 (1962) (holding that the Eighth Amendment prohibition against cruel and unusual punishment was made expressly applicable to the states through the due process clause of the Fourteenth Amendment). Because Plaintiff was in state custody, his due process claim is fully subsumed by the Eighth Amendment. *Longoria v. Texas*, 473 F.3d 586, 595 fn.8 (5th Cir. 2006).

### C.  Eighth Amendment Claims

Plaintiff asserts that he is suing the Defendants under the Eighth Amendment. "'The Supreme Court has held that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Torres v. Livingston*, 972 F.3d 660, 662 (5th Cir. 2020) (quoting *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002)). An Eighth Amendment claim regarding conditions of confinement must meet two requirements: first, the conditions must have caused an "objectively, sufficiently serious" deprivation, defined as the denial of "the minimal civilized measure of life's necessities." *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Second, prison officials must have acted with "deliberate indifference" to the plaintiff's health or safety, which means that the official knows that the inmate faces a "substantial risk of serious harm" but "disregards that risk by failing to take reasonable measures to abate it." *Id*. at 561 (internal citation and quotation marks omitted).

The official must be subjectively aware of the facts from which the inference could be drawn and must actually draw the inference. *Id*. "'Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'" *Torres*, 972 F.3d at 663 (quoting *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020)); *see Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015).

A defendant's personal involvement is an essential element of a civil rights cause of action, meaning that there must be an affirmative link between the injury and a defendant's conduct. *Delaughter v. Woodard*, 909 F.3d 130, 136-37 (5th Cir. 2018). A supervisory official may be held liable under § 1983 "only if (1) he affirmatively participates in the acts that cause the constitutional

deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotation marks and citations omitted); *see Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) ("[t]here is no vicarious or respondeat superior liability of supervisors under Section 1983").

> 1. <u>Supervisory Liability</u>

Plaintiff asserts that he is suing Defendants Davis, Wheat, Gorsuch, and Plantt in their respective supervisory roles regarding his contaminated water bottle claim. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez*, 801 F.2d at 793. The doctrine of *respondeat superior*, however, does not apply in Section 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has held that the term supervisory liability in the context of a Section 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. The Court rejected an argument that government officials may be held liable merely because they had knowledge or acquiesced in their subordinate's misconduct. *Id.* A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Plaintiff has not alleged any facts showing that each Defendant was personally involved in denying him his constitutional rights. His claim is purely speculative and does not save it from dismissal. *Silva v. Moses*, 542 F. App'x 308, 310-11 (5th Cir. 2013).

Supervisory liability can exist without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy" itself is a repudiation of constitutional rights and is "the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304 (quotations omitted). In order to establish a claim for governmental liability under Section 1983, a plaintiff must allege and identify a policy or custom of the governmental entity (or of a final policymaker of the governmental entity) that caused a deprivation of the plaintiff's rights. Plaintiff did not identify any policy or custom as being the cause of his constitutional injury here.

A.  Defendants Davis and Plantt

At most, Plaintiff contends that Defendant Davis entered into a contract with Niagara Water Company, who supplied bottled water that was sold in the Beto Unit Commissary; thereby placing bottled water into the stream of commerce. Accepting Plaintiff's allegation as true that Defendant Davis, in her role as the TDCJ-Correctional Institutions Director, entered into a contract with the Niagara Water Company for bottled water to be supplied to the unit commissaries, Plaintiff does not allege that Defendant Davis knew that the bottled water was contaminated or that the bottled water had caused him any harm. He has not alleged any facts that Defendant Davis was aware that by allegedly entering into a contract with Niagara Water Company to supply bottled water to the unit commissaries that Plaintiff could face a "substantial risk of serious harm" or that she "drew the inference" or that she "disregard[ed] that risk by failing to take reasonable measures to abate it." *Hernandez*, 522 F.3d at 561. Plaintiff has failed to plead a deliberate indifference claim as against Defendant Davis.

Similarly, Plaintiff contends that Defendant Plantt is liable because she allegedly placed the contaminated bottled water into the stream of commerce. Accepting Plaintiff's allegation as

true that Defendant Plantt, in her role as the Beto Unit Commissary Manager, sold bottled water from the Niagara Water Company in the Beto Unit Commissary, Plaintiff does not allege that Defendant Plantt knew that the bottled water was contaminated or that the bottled water had caused Plaintiff any harm. Plaintiff has not alleged any facts that Defendant Plantt was aware that Plaintiff could face a "substantial risk of serious harm" from the bottled water sold in the unit commissary, or that Defendant Plantt "drew the inference," or that she "disregard[ed] that risk by failing to take reasonable measures to abate it." *Hernandez*, 522 F.3d at 561. Plaintiff has failed to plead a deliberate indifference claim as against Defendant Plantt.

To the extent that Plaintiff is asserting that Defendant Davis's conduct of allegedly entering into a contract with Niagara Water Company for bottled water is negligence, that claim fails to state a claim under Section 1983. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (explaining that "[m]ere negligence, neglect or medical malpractice" does not give rise to a § 1983 cause of action) (quoting *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979)). Likewise, to the extent that Plaintiff is asserting that selling bottled water from the Niagara Water Company in the unit commissary is negligence, he has failed to state a claim under Section 1983 against Defendant Plantt. Plaintiff's claims against Defendants Davis and Plantt fail to state a claim for which relief can be granted and should be dismissed pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

B.    Defendants Wheat and Gorsuch

Plaintiff contends that Wardens Wheat and Gorsuch are liable to him for his pain and suffering because both are responsible for his health and safety while he was incarcerated at the Beto Unit under their supervision. (Dkt. #14, p. 8). Plaintiff asserts that they were aware of his

condition or circumstances through grievance, medical reports, and injury reports and did not take measures to abate his conditions.

To the extent Plaintiff would impute knowledge of his medical problems to Defendants Wheat or Gorsuch through his grievances, that claim would fail. *See, e.g.*, *Whitlock v. Stephens*, Civil Action No. 5:14cv94, 2016 WL 11474208, at *5 (E.D. Tex. Oct. 5, 2016) (stating that prisoner "cannot use the grievance process to impute personal liability," where prisoner merely alleged that the warden investigated and signed prisoner's grievance); *Marquez v. Quarterman*, 652 F. Supp. 2d 785, 790 (E.D. Tex. 2009) ("Plaintiff does not have a basis for a civil rights lawsuit against [defendant] just because he denied the Plaintiff's Step 2 grievance."); *Lueck v. Wathen*, 262 F. Supp. 2d 690, 696 (N.D. Tex. 2003) (explaining that prisoner's claim against assistant warden, who served on prison grievance committee and allegedly wrongfully denied prisoner's grievance, failed to state a claim where prisoner did not allege warden was personally involved in any constitutional violation, as "[p]ersonal involvement is an essential element in a civil rights action") (citing *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983)). Accordingly, there is nothing to suggest that Defendants Wheat or Gorsuch had any personal involvement in Plaintiff's injury, medical care, or lack thereof regarding his contaminated bottled water claim.

To the extent that Plaintiff is suing Defendants Wheat and Gorsuch over the responses to his grievances, he has failed to state a claim upon which relief may be granted. Plaintiff does not have a liberty interest in having his prison administrative complaints resolved in any particular manner. *See Geiger v. Jower,* 404 F.3d 371, 373–74 (5th Cir. 2005). Plaintiff cannot state a claim upon which relief may be granted over his grievances because he has no constitutional right to have his grievances resolved to his satisfaction. *Id*. Plaintiff's claims against Defendants Wheat

and Gorsuch should be dismissed for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## 2. Officer Green

Plaintiff sues Officer Green because she told him to get out her face when he complained that he had drank contaminated water from a water bottle purchased in the unit commissary. Accepting Plaintiff's allegations as true, Plaintiff does not allege that Defendant Green actually knew that the bottled water was contaminated or that the bottled water had caused him any harm. *See Harris v. Hegmann,* 198 F.3d 153, 159 (5th Cir. 1999) (stating prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety). He has not alleged any facts that Defendant Green was aware of a substantial risk of harm to Plaintiff's health, or that she "drew the inference" or that she "disregard[ed] that risk by failing to take reasonable measures to abate it." *Hernandez*, 522 F.3d at 561. Plaintiff has not alleged that Defendant Green was a medical provider who could have provided medical care. At most, Plaintiff could complain that Defendant Green should have sent him to the unit infirmary, which is nothing more than a negligence claim. Negligence claims fail to state a claim under Section 1983. *Varnado,* 920 F.2d at 321 (explaining that "[m]ere negligence, neglect or medical malpractice" does not give rise to a § 1983 cause of action) (quoting *Fielder ,* 590 F.2d at 107). Plaintiff has failed to plead a deliberate indifference claim as against Defendant Green.

## 3. Medical Deliberate Indifference

Plaintiff is suing Nurse Utende, P.A. Goins, P.A. Ciszewski, and the Unknown Medical Staff at the Beto Unit for deliberate indifference to his serious medical needs. Under the Eighth Amendment, prison officials have a duty to provide adequate medical care. *Rogers v. Boatright,*

17

709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish an Eighth Amendment violation in regard to medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston,* 739 F.3d 740, 747 (5th Cir. 2014) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs" (quoting *Wilson v. Seiter,* 501 U.S. 294, 297 (1991) (emphasis in original)).

Deliberate indifference "is an 'extremely high' standard to meet" *Brewster v. Dretke,* 587 F.3d 764, 770 (5th Cir. 2009), and requires satisfaction of both an objective and a subjective component. *Rogers,* 709 F.3d at 410. An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell,* 463 F.3d 339, 345–46 (5th Cir. 2006). As to the subjective component, a prison official acts with deliberate indifference only where he (1) knows the inmate faces a substantial risk of serious harm, and (2) disregards that risk by failing to take reasonable measures to abate it. *Id.*; *see also Harris,* 198 F.3d at 159 (holding that a prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert,* 463 F.3d at 346. Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997)), and a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, an inmate must demonstrate that prison staff "refused

to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985).

As an initial matter, the Court notes that Plaintiff's claim suffers from a causation problem. Plaintiff has self-diagnosed his lower back pain and intestinal issues as being caused by drinking approximately 16.9 fluid ounces of purified, bottled water. A self-diagnosis, alone, will not support a medical conclusion. *See Kayser v. Caspari*, 16 F.3d 339, 346 (5th Cir. 2006); *see also, Turner v. Moffett*, No. 3:12-CV-220, 2013 WL 5214070, at *3 (S.D. Tex. Sep. 17, 2013) (recognizing that the court may find allegations to be implausible when contradicted by the objective medical evidence); *Ahmadi v. Sova*, No. G-04-83, 2007 WL 656544, at *4 (S.D. Tex. Feb. 27, 2007) (quoting *Wesson v. Oglesby*, 910 F.2d 278, 281, 282 (5th Cir. 1990)) (explaining that conclusory "assertions of a serious medical condition" are insufficient to verify that a serious medical condition existed). Plaintiff has failed to nudge his water contamination claim from conceivable to plausible. *Iqbal*, 566 at 677–78. Plaintiff's self-diagnosis of water contamination is not sufficient to establish causation.

Here, Plaintiff has not alleged sufficient facts demonstrating that any Defendant violated his Eighth Amendment rights concerning his medical care. Construing Plaintiff's claim in the light most favorable to him, Nurse Utende, P.A. Goins, P.A. Ciszewski, and the Beto Unit Medical Staff have at most misdiagnosed Plaintiff's back pain and intestinal issues in their respective evaluations of his symptoms. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson*, 759 F.2d at 1238.

In the medical care context, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. Dissatisfaction with medical treatment or diagnosis does not constitute "deliberate indifference" to a serious medical need and does not rise to the level of the denial of a constitutional right. *Estelle* 429 U.S. at 106; *Johnson*, 759 F.2d at 1238. Construed in the light most favorable to Plaintiff, his claims against these defendants amount to nothing more than negligence, malpractice, or disagreement with treatment, which does not support a claim of deliberate indifference under Section 1983. *See, e.g., Varnado,* 920 F.2d at 321 (explaining that "[m]ere negligence, neglect or medical malpractice" does not give rise to a § 1983 cause of action) (quoting *Fielder,* 590 F.2d at 107).

Plaintiff's statements in his amended complaint reflect that Defendants Nurse Utende, P.A. Goins, P.A. Ciszewski, and the unit medical personnel were responsive to his medical needs. "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Nurse Utende treated Plaintiff's lower back pain with non-aspirin pain reliever. P.A. Goins prescribed Meloxicam for Plaintiff's back pains. P.A. Ciszewski ordered an x-ray, and prescribed ibuprofen, bisacodyl, docusate sodium, and methocarbamol for his back and intestinal pain. On May 26, 2020, the Beto Unit Medical Staff prescribed Methocarbamol and Tylenol for Plaintiff's pain.

Here, Plaintiff's own statements in his Amended Complaint (Dkt. #14) reveal that Plaintiff was evaluated by nurses and physician's assistants and received treatment for his pain, even though

the pain was not alleviated. There is nothing in his Amended Complaint to support a conclusion that the Defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Overall, the facts as alleged in the Amended Complaint do not support a claim of deliberate indifference to Plaintiff's serious medical needs by Defendants. Plaintiff's medical deliberate indifference complaint fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact.

Plaintiff's claims against Defendants Utende, Goins, Ciszewski, and the Beto Unit Medical Staff should be dismissed for failure to state a claim upon which relief may be granted. Plaintiff's medical deliberate indifference complaints should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2(b).

## Recommendation

It is therefore recommended that Plaintiff's suit be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(b).

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve, and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on*

*other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 24th day of March, 2023.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE